UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Kathleen M. Sharp,

    Plaintiff,

v.

Worthington City School District
Board of Education

    Defendant.

Case No. 2:08-CV-0225
JUDGE SARGUS
Magistrate Judge Kemp

## OPINION AND ORDER

This case is before the Court on Defendant Worthington City School District Board of Education's ("Defendant") Motion to Dismiss. (Doc. 10). Defendant moves to dismiss Plaintiff Kathleen Sharp's complaint under Civil Rule 12(b)(1) for lack of federal subject matter jurisdiction.

### I.

Plaintiff was employed by Defendant as a high school English teacher from 1992 to 2008. According to Plaintiff's complaint, she was involuntarily terminated as a result of racial discrimination on the part of Defendant. Plaintiff's complete work history, and the facts surrounding her suspension and eventual termination are not relevant here, because, on October 27, 2007, after filing a charge of discrimination with the Equal Employment Opportunity Commission, Plaintiff signed a comprehensive "Resignation Agreement and Release of All Claims." ("Settlement Agreement" Doc. 2-2). The release provides, in relevant part, that Plaintiff would resign, effective November 1, 2008, and that she would continue to be employed

and paid by Defendant until that time. She was to "remain available for assignment and . . . be assigned to work at home or at another location at the direction and/or request of the Board . . . through October 31, 2008." (Id. at ¶4.) In exchange, Plaintiff agreed to "waive all claims and forever release the Board, the individual Board members . . . from any and all claims of any nature whatsoever . . . in any forum, whether known or unknown, arising from or in any way related to her employment with the Board from the beginning of time up to and including the date of this Agreement." (Id. at ¶11). The Agreement was contingent on Plaintiff dismissing her EEOC discrimination charges. (Id. at ¶13). Plaintiff acknowledged that "she has consulted with legal counsel of her choosing, and that the execution of this Agreement, which includes her resignation, is freely and voluntarily given and will be submitted for acceptance by the Board and cannot hereafter be revoked." (Id.)

Following the execution of the Settlement Agreement and Release on October 27, 2007 and November 12, 2007, Plaintiff claims that she was assigned to work as a tutor in the Worthington Children's Home, a school for special needs students. (Compl. at ¶17). According to Plaintiff, this assignment constituted a breach of the Settlement Agreement. (Id.) Plaintiff ceased working at the Children's Home after two days. (Id. at ¶19). She claims that since that time, Defendant has not paid her salary or assigned her to work elsewhere, in breach of the Settlement Agreement. (Id.)

The EEOC issued a right-to-sue letter on January 28, 2008.[1] (Id. at ¶21). Thereafter, on March 7, 2008, Plaintiff filed this suit, asserting claims of race discrimination under Title VII of the Civil Rights Act of 1964, race discrimination and retaliation under Ohio law, breach of

---

[1] It is not clear from the complaint why the EEOC charges were not dismissed, as contemplated by the Settlement Agreement.

contract and intentional infliction of emotional distress. (Id. at ¶¶23, 25, 27, 29).

Defendant moves to dismiss the complaint, contending that the Settlement Agreement precludes Plaintiff from asserting federal claims, and that her only recourse is to file a claim for breach of contract under state law.

## II.

The Sixth Circuit Court of Appeals decision in *Jones v. PPG Industries*, 937 F.2d 608 (Table), 1991 U.S. App. LEXIS 20483 (6th Cir. July 9, 1991), addresses the issues presented by this case. In *Jones*, the Court affirmed summary judgment in favor of an employer after an employee first entered into a settlement agreement resolving a claim of race discrimination, and subsequently filed a racial discrimination lawsuit against the employer. The employee claimed that a bad-faith breach of the settlement agreement revived the original cause of action. The Court of Appeals disagreed.

Following *Jones*, in *Folley v. Henderson*, 175 F. Supp.2d 1007, 1011-12 (S.D. Ohio 2001), this Court explained that a breach of a negotiated settlement agreement cannot revive plaintiff's right to litigate the claims encompassed by that agreement. The case involved a postal service employee who alleged that the postal service violated Title VII by engaging in sexual harassment, discrimination, and retaliation. The employee settled her Title VII claims, but subsequently sought to litigate her claims, asserting that the postal service had breached the agreement, and that she was coerced into the settlement, rendering the settlement void. The Court held that "a breach of the agreement. . . would not revive her ability to litigate the settled Title VII claims." *Id.* at 1012. The Court further explained:

> The Sixth Circuit has adopted this position (which has been expressed by other courts), albeit in an unpublished decision, reasoning:

> Although there is not a great deal of authority on this issue, the parties seem to agree that a discrimination plaintiff can enter into a settlement, and that doing so forecloses the right to sue for the underlying Title VII violation. The Supreme Court has stated, in dicta, that "an employee may waive his cause of action under Title VII as part of a voluntary settlement." *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 52, 94 S. Ct. 1011, 39 L. Ed. 2d 147 (1974). Various courts have interpreted this to mean that parties who enter into settlements of Title VII claims waive their right to proceed on the underlying claim. *See, e.g., Pilon v. Univ. of Minnesota*, 710 F.2d 466 (8th Cir. 1983); *Vermett v. Hough*, 606 F. Supp. 732, 745 (W.D.Mich.1984); *Sherman v. Standard Rate Data Serv. Inc.*, 709 F. Supp. 1433 (N.D. Ill.1989). Any other rule would virtually eliminate the incentive for defendants to settle Title VII suits. *Jones v. PPG Indus., Inc.*, 937 F.2d 608, 1991 WL 122364 (6th Cir. 1991) (unpublished). *See also Witte v. Lakeside Inn & Casino*, 61 F.3d 914, 1995 WL 437939 (9th Cir. 1995) (unpublished) (holding that the breach of a settlement agreement does not revive settled Title VII claims); *Breen v. Norwest Bank Minnesota*, 865 F. Supp. 574, 577-578 (D. Minn. 1994) ("Even where the plaintiff alleges a breach of the underlying settlement agreement, the plaintiff's exclusive remedy is for breach of contract; she is precluded from reviving the underlying claims.").

*Folley*, 175 F. Supp.2d at 1011-12. The Court also found no evidence of coercion, such that the settlement agreement would be rendered void. *Id.* at 1013. Therefore, the plaintiff's previously-settled claims were dismissed. *Id.*

In *Hinton v. Lazaroff*, Case No. 2:03-CV-878, 2006 U.S. Dist. LEXIS 54610, *11 (S.D. Ohio July 21, 2006), this Court followed *Jones* and *Folley*, holding that a state employee's racial discrimination claims could not be litigated following a settlement of all such claims at the EEOC stage. The employer's alleged breach of the settlement did not "resurrect the original discrimination charge" covered by the parties' settlement agreement. *Id.* at *9. The Court further held that:

> This same proposition holds true for underlying causes of action not brought under Title VII. *See Simpson v. Columbus Southern Power Co.*, Case No. C2-02-1080, 2003 U.S. Dist. LEXIS 13400 (S.D. Ohio July 14, 2003) (Americans with Disabilities Act claims and Employee Retirement Income Security Act claims).

4

> Moreover, it is plainly the policy of Congress that the EEOC "shall endeavor to eliminate" alleged unlawful practices "by informal methods of conference, conciliation and persuasion." 42 U.S.C. §2000e-5. The preference for voluntary disposition of complaints is also evidenced by the requirement that issuance of the notice of right to sue be delayed until time for conciliation has lapsed. 42 U.S.C. §2000e-5(f)(1). *See Alexander v. Garner-Denver Co.*, 415 U.S. at 44 ("Congress enacted Title VII . . . to assure equality of employment opportunities by eliminating those practices and devices that discriminate on the basis of race, color, religion, sex, or national origin. . . . Cooperation and voluntary compliance were selected as the preferred means for achieving this goal.").
>
> The proper redress for an alleged breach of the [settlement agreement] is a state law breach of contract claim. . . .

The Court granted judgment in favor of the employer, dismissing Plaintiff's federal claims. *Hinton*, 2006 U.S. Dist. LEXIS 54610, *9-12.

### III.

Plaintiff Sharp contends that Defendant's alleged breach of the settlement agreement and release revives her original causes of action arising under Title VII. As set out above, the settled law in this Circuit mandates dismissal of Plaintiff's complaint. There is no dispute that the federal claims raised by Plaintiff's complaint are identical to those raised in her EEOC charge and released in the October, 2007 Settlement Agreement. Plaintiff does not allege that the Settlement Agreement is invalid or unenforceable, and she does not dispute that she voluntarily entered into the contract.

In her memorandum in opposition to Defendant's motion to dismiss, Plaintiff asserts that "it is well established that when a party to a civil rights lawsuit intentionally and in bad faith breaches a settlement agreement, the other party can sue for breach of contract as well as on the underlying claims." (Doc. 14 at pg. 1). Plaintiff does not, however, cite any cases with such a

5

holding, nor has the Court found any controlling or persuasive authority reaching that result. Moreover, Plaintiff's complaint contains no allegation that Defendant breached the Settlement Agreement "intentionally and in bad faith."

Plaintiff's memorandum misconstrues dicta from both *Jones* and *Folley* to suggest that a "bad-faith breach" exception exists to the general rule that a valid settlement agreement bars re-litigation of the underlying claims. In *Jones*, the Court considered "for the sake of argument, that a preexisting bad-faith intent to breach a settlement agreement renders the original agreement void and would allow Jones to proceed with her claim." *Jones*, 1991 U.S. App. LEXIS 15491, *3-4. The Court concluded that even so, without an allegation of pre-existing bad-faith intent to breach, Jones' original, settled claims were barred by the settlement agreement. As this Court explained in *Folley*, "[e]ven if a 'bad faith' exception exists, however, Folley does not suggest that the USPS entered into the settlement agreement with a preexisting, bad faith intent to breach it." *Folley*, 175 F.Supp. 2d 1007, fn 8 (citing *Jones*).

Plaintiff has not alleged that Defendant entered into the Settlement Agreement with a bad-faith intent to breach the agreement, or even that it breached the Agreement in bad faith. Thus, there is no claim that Plaintiff was fraudulently induced to enter into the contract which settled her claims. Even if a "bad-faith" exception exists to the well-established principle regarding the finality of settlement agreements, which no Court in this jurisdiction has recognized, Plaintiff's federal claims are barred by operation of the Settlement Agreement and Release which she entered into on October 27, 2007. Plaintiff does have the right to pursue a state law claim against Defendant for its alleged breach of the settlement agreement.

In accordance with the law set out above, Plaintiff's claims for race discrimination under

6

Title VII, and for discrimination and retaliation under Ohio law are barred by the Settlement Agreement, as they arise out of conduct that allegedly occurred before execution of the Settlement Agreement.² Plaintiff's claims for breach of contract and intentional infliction of emotion distress³ arise under state law, and this Court lacks subject matter jurisdiction over Plaintiff's remaining claims. *See Hinton*, 2006 U.S. Dist. LEXIS 54610, *24.

### III.

For the foregoing reasons, Defendant's Motion to Dismiss (doc. 10) is **GRANTED**. The Clerk is directed to enter judgment in favor of Defendant Worthington City School District Board of Education.

**IT IS SO ORDERED.**

10-27-2008
**DATE**

**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**

---

² In *Folley*, this Court considered whether state law might apply to revive a settled Title VII claim following the breach of a settlement agreement, and found that Ohio law prevents such a result. *Folley*, 175 F.Supp. 2d 1007, fn 9, *citing Board of Commissioners of Columbiana County v. Samuelson*, 24 Ohio St. 3d 62, 63, 493 N.E.2d 245 (1986) (settlement agreement "extinguishes or merges the original rights or claims and correlative obligations and, where the agreement is executory, substitutes for the original claim the new rights and obligations agreed to.").

³ Although not clear from the facts as alleged in the complaint, to the extent Plaintiff's claim for intentional infliction of emotional distress arises out of conduct that occurred after the parties' settlement, and therefore represents a new claim, Plaintiff may be able to pursue such a claim in state court.